## Skonieczki Estate

*Daniel R. Ormanowski*, for claimant.

*Robert J. Doran, Joseph F. Flanagan* and *Anthony B. Panaway*, contra.

LOPATTO, P. J., October 24, 1961.—This matter comes before the court on objections to a petition of Bernadine Zyla, daughter of decedent, claiming the family exemption, and to the report of the court-appointed appraisers of decedent's real estate.

The objections were filed by Stella Pogwist, daughter of decedent, and by Leonard Stigora, guardian of the estate of Chester Skonieczki, an incompetent, son of decedent.

By stipulation filed of record, counsel for all parties agree that Chester Skonieczki, the incompetent son of decedent, is an adult, and that for many years prior to his having been declared incompetent did not form a part of decedent's household.

The objections filed are as follows:

"1. Bernadine Zyla did not form a part of the household of the decedent at the time of his death and therefore does not qualify for the exemption.

"2. The valuation placed on the real estate by the appraisers is not the market value of said premises.

"3. The appraisers' valuation does not specify whether the premises in question are an integral unit or divisible plots of land.

"4. The claim for family exemption does not specify which parcel claimant chooses to select."

The first determination for the court must be as to whether or not Bernadine Zyla is entitled to claim the family exemption. At the hearings on the above objections, testimony was adduced to show that decedent died testate on the 18th day of March, 1960, survived by three children, Chester Skonieczki, Bernadine Zyla and Stella Pogwist; that Chester Skonieczki was declared incompetent by this court on December 14,

1960, and Leonard Stigora was appointed guardian of his estate. No claim for the family exemption was made by the guardian of Chester Skonieczki's estate or by Stella Pogwist.

The testimony further shows that decedent was a paying guest of the Summit Hill Nursing Home, Northampton Street, Wilkes-Barre, Pennsylvania, having been admitted there September 27, 1958, and that he remained there until his death on March 18, 1960.

From the testimony it further appears that the claimant, Bernadine Zyla, lived with her father and mother until after the death of her mother, March 31, 1951. She married on May 26, 1951, and went to live with her husband in Plymouth, Pennsylvania, staying there for two months, after which she and her husband returned to her father's home to live with him in July of 1951, and lived there continuously until the time of her father's death. In the spring of 1958, decedent had his leg amputated at the General Hospital, Wilkes-Barre, remained there for several months, returned to his home for a month, and then became a patient of the Summit Hill Nursing Home. His entry into the Summit Hill Nursing Home was upon the advice of his doctor, Dr. Stanley Stapinski, and a visiting nurse. Decedent left the nursing home for a period of two weeks when he was again a patient at the General Hospital, and thereafter returned to the nursing home, remaining there until his death.

The testimony of Dr. Stapinski shows that decedent was sent to the nursing home so that his diet could be regulated, and some guidance and instructions be given if and when he obtained an artificial leg.

The testimony shows, also, that decedent paid for the taxes and upkeep of the property, and that he did not maintain a separate residence, quarters or living arrangements away from his daughter and her family while at his home. None of this testimony has been

contradicted by objectors; therefore, it must be given full weight in the determination of this matter.

It is the opinion of this court, and we so hold that decedent's stay at the nursing home did not break his family relationship that had existed for many years prior to his entry into the nursing home, and that his stay there was only temporary even though it lasted approximately 18 months and until his death (See 3 Hunter—Family Exemption, 6(c)), and Bernadine Zyla and decedent were "members of the same household," and that, therefore, Bernadine Zyla is entitled to the family exemption.

The next objection is that the valuation placed upon the real estate by the court-appointed appraisers is not the market value.

This court appointed Robert Twarowski and Anthony Dobkowski to value and appraise the real estate in question, and in their return filed March 21, 1961, appraised said real estate as follows:

| | |
|---|---|
| 192 Newport Street | $2,250 |
| 194 Newport Street | $2,000 |
| Corner lot 50 feet by 150 feet | $ 300 |
| 2 lots each 25 feet by 150 feet at $150 | $ 300 |
| Total | $4,850 |

The objectors presented no testimony to contradict the values set by the appraisers, nor did they attack the qualifications of said appraisers. ". . . The evidence must be clear and free from doubt that a palpable wrong has been inflicted by stealth, fraud, or other unfair means, before we can disturb our former decree." Davis Estate, 5 Kulp 162.

The next question is: "The appraisers' valuation does not specify whether the premises in question are an integral unit or divisible plots of land."

From a perusal of the appraisement, it is obvious that the parcels of land are divisible. Decedent, in his

will, divided these premises, as is indicated by the appraisers' report.

The next and last objection raised by objectors is that the claim for family exemption does not specify which parcel claimant chooses to select.

While the petition for the appointment of appraisers sets forth all of the real estate of the decedent, at hearing on these objections claimant amended her petition to show that she was claiming 192 Newport Street, 194 Newport Street, and the corner lot 50 feet by 150 feet, to satisfy her family exemption.

Under the terms of the will of decedent, 192 Newport Street was devised to Bernadine Zyla and Stella Pogwist, share and share alike; 194 Newport Street to Chester Skonieczki; and the corner lot 50 feet by 150 feet to Chester Skonieczki. Two lots in the rear of these premises were devised, one to Bernadine Zyla and one to Stella Pogwist. That constituted all of decedent's real estate.

Section 211 of the Fiduciaries Act of April 18, 1949, P. L. 512, as amended, allowing the family exemption, reads as follows:

"WHEN ALLOWABLE.—The spouse of any decedent dying domiciled in the Commonwealth, and if there be no spouse, or if he has forfeited his rights, then such children as are members of the same household as the decedent, may retain or claim as an exemption, either real or personal property, or both, not theretofore sold by the personal representative, to the value of one thousand dollars . . ."

The claimant in this case elected to take three parcels of real estate, which more than satisfied her $1,000 claim. In fact, either one of the parcels having a home erected thereon would have satisfied said claim.

There is no legislation in Pennsylvania regulating the rights of parties where a person entitled to an ex-

emption chooses property specifically devised or bequeathed to another. (See Fiduciary Review, June, 1953, p. 3, "Family Exemption—Choice of Property —Real Estate Specifically Devised.")

In this review of the law relative to family exemption, the principal case discussed is Stachnick Estate (O. C., Lackawanna County), 3 Fiduc. Rep. 258.* In this opinion by the President Judge of the Orphans' Court of Lackawanna County, he suggests speculation as to numerous possibilities where the value of the property chosen exceeds the exemption particularly setting out an example where the claimant may claim $50 exemptions from several parcels of real estate. The editor therein quoted as follows: "Certainly the court should exercise its powers, as was done by Judge Brady in the principal case, to preserve property for the benefit of the specific devisee or legatee, except to the extent reasonably necessary to recognize exemption rights. The court can undoubtedly limit the right to claim the exemption 'in part' from numerous items of property."

In the petition before us, the appraisers properly appraised the real estate presented to them. However, the multiple selection made by the claimant covers more parcels of real estate than is necessary to satisfy her $1,000 claim, and we are of the opinion that while the claimant has the right to select whatever real estate she desires, she cannot select various parcels when one parcel chosen will satisfy her claim.

The testimony presented by the appraisers to the effect that their appraisal was based on the premise that the claimant was to get all three properties selected, and if not, it would adversely affect the market value of each individual parcel is not before us now.

"The court has no authority or power to substitute

---

* Affirmed on appeal, 376 Pa. 592.

its judgment for the judgment of the appraisers in fixing the value of the property . . . The court cannot make the valuation on evidence taken by it." Williams Estate, 2 Fiduc. Rep. 46. The only remedy here, as in the Williams Estate, is to set aside the appraisal and direct a new one.

After an examination of the record, the court holds that Bernadine Zyla is entitled to the $1,000 family exemption; the real estate appraisal is set aside and the appraisers are directed to make new appraisals in accordance with the findings of this opinion, after which the claimant may make her selection of the real estate accordingly.