## Schaszberger's Estate

368

*James J. Logan* and *John A. M. McCarthy*, Special Deputy Attorney General, for Commonwealth.

*George Hay Kain, Jr.*, of *Kain, Kain & Kain*, and *John A. Hoober*, for appellants.

GROSS, P. J., September 29, 1938.—This proceeding is an appeal from an appraisement for transfer inheritance taxes. . . .

There are a number of questions arising in this proceeding, the first of which is the manner of taking the appeal. Although the appeal itself states that it was taken in accordance with the provisions of the Act of July 11, 1917, P. L. 832, this could not be the case, because the Act of June 20, 1919, P. L. 521, expressly repealed the Act of 1917 aforesaid. This appeal must, therefore, have been taken under section 13 of the latter act, which provides as follows:

"Any person not satisfied with any appraisement of the property of a resident decedent may appeal, within thirty

days, to the orphans' court, on paying or giving security to pay all costs, together with whatever tax shall be fixed by the court."

It will be observed that the act of assembly authorizing this appeal is absolutely silent on the matter of prescribing the form of the appeal or any procedure with reference thereto, except to say that the appeal shall be taken "to the orphans' court", as was done in this case.

It is contended by the Commonwealth that the proper method and practice for taking an appeal of this kind is prescribed by section 17 of the Orphans' Court Act of June 7, 1917, P. L. 363, which provides for the filing of a petition in the orphans' court, setting forth facts necessary to give the court jurisdiction; the specific cause of complaint; the relief desired, and the awarding of a citation returnable at a day certain, not less than 10 days after the issuing thereof.

The argument of the Commonwealth in support of its contention is that by the issuing of a citation, the Commonwealth would have acquired immediate notice of the appeal and be in position promptly to press for its final disposition. We cannot agree with this contention of the Commonwealth, for the reason that the practice so suggested would lose sight of the fact that appeals in cases of this kind are of right, and, under the express words of the act, are to be made directly "to the orphans' court" and, therefore, to issue a citation, in a sense, would recognize some right on the part of the Commonwealth to question the right to take the appeal by filing an answer to the citation. The Commonwealth never has any right to object to the appeal being taken because it is a matter of right when taken by any interested party not satisfied with the appraisement. We have searched in vain to find judicial authority specifying the form which an appeal of this kind should take. It has been suggested by some of the lower court decisions as well as in Gilbert's admirable treatise on Pennsylvania Inheritance Taxation, pp. 502, 504, that an appeal in the first instance should be filed in the office

of the register of wills and thereafter a petition should be addressed to the orphans' court asking that the record be certified to said court for the determination of all questions raised by such appeal; but this suggested practice has also been condemned by the Orphans' Court of Philadelphia County in McIntosh's Estate, 8 D. & C. 443, where Judge Gest held (syllabus) : "A party dissatisfied with the assessment for transfer inheritance tax should appeal directly therefrom to the Orphans' Court." It has become a well-established practice followed in this county since the right of appeal has existed and even under section 12 of the collateral transfer inheritance tax act of May 6, 1887, P. L. 79, to file the appeal in such cases directly in the orphans' court, as was done in the present case. In view of this well-established practice, followed for more than 30 years in this county to the court's knowledge, and the fact that the act of assembly authorizing the appeal is silent on the practice to be pursued, we do not feel justified in holding that our practice has been erroneous in taking an appeal of this kind. The mere fact that the appeal, as taken in this case, does not furnish the Commonwealth with notice thereof promptly is not an insuperable objection to the practice employed. Taxing statutes should receive a strict construction, and in the absence of the statute either expressly or inferentially requiring notice to the Commonwealth of the filing of the appeal, we do not think that failure to give notice is sufficient to quash it: Commonwealth v. P. R. T. Co., 287 Pa. 190. We, therefore, hold that this appeal, as taken, is proper as to manner and form.

Another question which the Commonwealth raises is that the parties appellant filed this appeal as executrices of the estate of decedent and not as legatees under his will, and that by reason of this alleged representative capacity, this appeal has been filed by parties who are not interested in the real estate and, therefore, had no right under the act of assembly to take the appeal.

In the first place, it is not clear from the face of the appeal itself as to the capacity in which appellants acted when they filed it. Did they act in a representative capacity, or did they act as individuals? The appeal purports in its beginning paragraph to have been filed in a representative capacity and yet it was not executed as such; but on the contrary was signed and affirmed to as individuals. The same is true of the bond which appellants originally filed. Appellants counter the contention of the Commonwealth by asserting that they filed this appeal as individuals and also claim the right to amend so that the appeal will be considered on its merits as having been taken by appellants in their individual capacity. It is true, as a legal proposition, that an executor, unless the will of testator gives him jurisdiction over real estate, or an administrator, unless jurisdiction is conferred upon him by the orphans' court, has no right to appeal from the appraisement for transfer inheritance tax purposes, because there is no duty devolving upon a fiduciary of this sort to collect or to exercise any offices in the matter of the collection or payment of the transfer inheritance tax.

The question of the right to amend has received judicial determination by our own local court in Krug's Estate, 50 York 53, where an appeal was taken by the administrators of the estate of David D. Krug, deceased, from the appraisement for transfer inheritance tax purposes, when the court held:

"However, two of the fiduciaries, who were also children and heirs of the decedent, insist that though an executor or administrator has no right of appeal, yet the record showing that two of the appellants were heirs, the appeal should be considered as amended and heard on its merits."

In Blaney's Estate, 37 Pa. Superior Ct. 76, where an executor had appealed from a decree of the orphans' court dismissing exceptions to an auditor's report, the court held that:

" 'Executors, as such, have no right to appeal from a decree distributing the funds in their hands', and this has been consistently followed until the present day. Inasmuch, however, as it appears from the evidence that the F. S. Blaney, who is named among the heirs and distributees of this estate, is the same person as the executor, Frank Blaney, we consider the appeal as if made by him as a party interested."

The Supreme Court, in Kaufmann's Estate, 293 Pa. 73, enunciates the same doctrine as we have already quoted from Blaney's Estate, supra. Our attention has been directed to Blumenthal's Estate, 51 Montg. 214, in which an appeal from an inheritance tax appraisement was taken and the court refused to substitute the heir as appellant for the executors, who were different people, after the 30-day period for taking the appeal had elapsed. We think the Blumenthal case is in entire harmony with Krug's Estate, supra, and the authorities upon which it is based, because appellants in this instance, whether they took their appeal as executors or as individuals, are the same persons. If we were to dismiss the appeal for this reason, the Commonwealth would be in no better position because appellants would still be in position to make a defense to any proceeding which might be instituted by the Commonwealth, looking to the collection of the tax. Our court in Gochenour's Estate, 50 York 177, held that the Commonwealth is not entitled to collect a transfer inheritance tax on assets mistakenly included in the appraisement of which decedent did not die seized, nor have any interest in at the time of his death, and, therefore, if we were to dismiss this appeal, it would avail the Commonwealth nothing. We, therefore, permit the amendment, as requested by appellants, and the appeal will be considered and disposed of on its merits as though it had been filed by appellants as individuals.

The Commonwealth also contends that appellants have been guilty of laches by their failure to expeditiously prosecute this appeal.

The doctrine of laches is based on the theory that public policy demands that stale claims be discouraged and suits be brought within a reasonable time: Riley v. Boynton Coal Co. et al., 305 Pa. 364. The rule that equity will not enforce stale claims is particularly applicable where the inability of the court to do entire justice arises by reason of the death or disappearance of parties or witnesses or by reason of the transactions having become so obsolete by lapses of time as to render the ascertainment of the exact facts difficult or impossible: Wallace's Estate, 299 Pa. 333, 340. Laches is an equitable doctrine to be applied only against a plaintiff or one seeking affirmative relief and cannot in any sense be applied against a defendant for failing to speed up an action against him. Defendant may make himself liable to default by his failure to appear, answer, plead, etc., and suffer a judgment to be entered against him; but this is not laches. In this appeal, appellants are not seeking any affirmative relief. They are making no claim to recover anything from the Commonwealth. Appellants are only defending against the claim made by the Commonwealth. The Commonwealth, by filing its appraisement in the office of the register of wills, must be regarded as being in the same position as plaintiff in an action at law, and appellants by filing their appeal are to be regarded as defendants in such action. It is true that the agents of the Commonwealth, who are now aggressive in pressing this appeal to final determination, are right in their complaint that the delay is almost reprehensible, but this delay cannot be charged against appellants on the ground that the Commonwealth did not have notice that the appeal had been filed. Section 14 of the Act of 1919, supra, applicable to the collection of transfer inheritance taxes at the time of the death of decedent, provides that the register of wills of the county shall enter in a book to be provided by the Commonwealth the returns made by all appraisers for inheritance tax purposes and that the register shall transmit to the Auditor General on the first day of each month a statement of all

returns made by said appraisers during the preceding month, upon which the taxes have been paid or remain unpaid, which statement shall be entered by the Auditor General in a book to be kept for that purpose. This section of the act further provides that when such tax shall remain due and unpaid for one year, the register may apply to the orphans' court by bill or petition to enforce the payment of the same. The appraisement from which this appeal is taken was filed in the office of the register of wills on July 11, 1921, from which date the Commonwealth knew the tax was not paid, from the records both in the office of the register of wills and in the office of the Auditor General. The first and final account of the executors of this estate was filed in the Office of the Register of Wills of said York County on July 9, 1921, which gave the register of wills, as agent for the Commonwealth, notice that the transfer inheritance tax in this estate had not been settled in full on the basis of the appraisement. This fact remains of record in said office and was available to every subsequently elected register of wills. If the agents of the Commonwealth, charged with the duty of collecting transfer inheritance taxes, had pursued their duties with aggressiveness and due diligence, this delay about which the Commonwealth now complains would not have occurred, and the testimony of Amos E. Rieker, which the Commonwealth claims to have lost through his death, would undoubtedly have been available.

Laches may be imputed to the Commonwealth as well as to an individual: Bailey's Estate, 241 Pa. 230; Pittsburgh Rys. Co. et al. v. Borough of Carrick et al., 259 Pa. 333. Appellants have asked the court to apply this doctrine against the Commonwealth. We do not feel, however, that it would be proper to do so because there is no claim or evidence to show that appellants have been put to any disadvantage or were prejudiced in any manner by reason of the death or disappearance of parties or witnesses or by reason of any change in the circumstances or conditions since the appeal was filed.

The next and final question involved in this appeal is whether or not the conveyances of the real estate by decedent to his two daughters were made in contemplation of his death or intended to take effect in possession or enjoyment at or after his death. Were they completed transfers without conditions or reservations on his part, or were the conveyances a mere device on the part of decedent intended by him to evade the payment of transfer inheritance taxes to the Commonwealth?

In our ninth finding of fact, we said that the conveyances were not made in contemplation of the death of decedent nor intended to take effect in possession or enjoyment at or after his death. This finding of fact includes conclusions of law and, therefore, requires discussion.

From the testimony, which we have quoted at length, we think our ninth finding of fact is clearly justified. There is no evidence in this case that would warrant a finding that the conveyances of the real estate to decedent's two daughters were made by him in contemplation of his death or intended to take effect in possession and enjoyment at or after his death. These conveyances were bona fide and unconditional transfers, fully consummated by conveyance of title and delivery of possession. Whether or not the consideration was paid is immaterial. There is no merit in the contention of the Commonwealth that because decedent continued to live with his daughter in part of the premises conveyed until the time of his death, this indicates that the possession or enjoyment was postponed until decedent's death. See Cooper's Estate, 24 D. & C. 598, affirmed by the Supreme Court in 320 Pa. 418.

There is no evidence whatsoever to sustain the further contention of the Commonwealth that the conveyances of the real estate to decedent's daughters were a fraudulent scheme or device adopted by him to defraud the Commonwealth of transfer inheritance taxes.

If real estate transferred to the daughters is subject to the tax, it must be imposed under the authority of sec-

tion 1 (*c*) of the Act of June 20, 1919, P. L. 521, the title of which so far as is pertinent, reads as follows:

"Providing for the imposition and collection of certain taxes upon the transfer of property passing from a decedent who was a resident of this Commonwealth at the time of his death, and of property within this Commonwealth of a decedent who was a nonresident of the Commonwealth at the time of his death". In section 1 of said act, the tax is imposed upon the transfer of any property, real or personal, to persons or corporations in the following cases:

"(*c*) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale, or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death."

It is the contention of counsel for appellants that the Act of 1919, supra, is unconstitutional under article III, sec. 3, of the Pennsylvania Constitution, insofar as it is to be applied to the facts of this case because the provisions of the statute are broader than the subject expressed in the title, in that the title to the act limits the tax to property, "passing from a decedent . . . at the time of his death," and makes no reference to transfer "made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death." This question has already been decided by the Supreme Court in Spangler's Estate, 281 Pa. 118, 124, where the contention of appellants' counsel is fully sustained and we, therefore, do not deem it necessary to go into any further or elaborate discussion of that question. The Supreme Court by way of further explanation and clarity of its decision, added, what we think is in the present case of great significance, as follows:

"It may not be unwise, although perhaps unnecessary, to add that a bona fide and unconditional transfer by deed or gift, which has been fully consummated by con-

veyance of the title, and absolute and exclusive possession of the property taken by the transferee, is not within the purview of the statute; nor is a bona fide and unconditional grant, bargain or sale, which has been thus fully consummated, or only awaits consummation in due course, without reference to the death or possible death of the grantor or bargainer; since neither is 'to take effect in possession or enjoyment at or after such death.' "

It has been argued by counsel for the Commonwealth that the above-quoted remarks of the Supreme Court are mere obiter dicta and not necessary to the discussion of the question decided by the court. We cannot agree with this argument. We think the comments of the court in Wanamaker's Estate, 8 D. & C. 569, 572, are quite appropriate, where the court says:

" 'But the present is not the case of some extra-judicial dictum, something said as an argument or illustration, and so, strictly obiter, or by the way, but was the deliberate opinion of the Supreme Court . . . These remarks were entirely pertinent to the case in hand, and evidently intended to settle the law and serve as a guide to the profession and the lower courts, and they must be regarded as such in this case.' "

It would, therefore, seem clear that under the authority of Spangler's Estate, supra, as applied to the facts of this case, the Act of June 20, 1919, P. L. 521, the authority relied upon the Commonwealth for imposing this tax, is void and the appeal must be sustained.

## Decree

And now, to wit, September 29, 1938, it is hereby ordered and decreed that the motion of the Commonwealth to quash or enter a decree of dismissal of the appeal is overruled and dismissed, and the appeal from the transfer inheritance tax appraisement filed in this estate is sustained.